IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

        Plaintiff,

v.        CIV No. 03-1261 PK/LFG

DEANNA PUGH, MARTY STROMAN
(a/k/a MARTY HUGHES), and HOLLY
JORDAN HUGHES, a minor child,

        Defendants.

**FINDINGS OF FACT AND
RECOMMENDED DISPOSITION**[1]

THIS MATTER is before the Court on an application for approval of a settlement. Court approval is necessary because of the presence of the minor child Holly Jordan Hughes.[2] Having heard the presentations of counsel, along with the testimony of the parties, at a hearing on February 27, 2004, the Court finds:

---

[1] Parties were advised of their right to file objections to this report and recommendation within ten days, pursuant to 28 U.S.C. § 636(b)(1) and of their option to waive their right to file objections. Defendant Pugh elected not to waive the time for filing objections. Therefore, the parties have ten days from date of entry of this pleading in which to file objections to these proposed findings and recommended disposition before they are presented to Judge Kelly.

[2] The general rule is that the court must give approval to a settlement when minor children are involved. The court "has a special obligation to see that [children] are properly represented, not only by their own representatives, but also by the court itself." Garcia v. Middle Rio Grande Conservancy Dist., 99 N.M. 802, 808, 664 P.2d 1000, 1006 (Ct. App. 1983), *overruled on other grounds by* Montoya v. AKAL Sec., Inc., 114 N.M. 354, 357, 838 P.2d 971, 974 (1992).

1

**Findings**

1.  Interpleader Plaintiff, Northwestern Mutual Life Insurance Company ("Northwestern Mutual") brought this lawsuit against Defendants. [Complaint.] The lawsuit presents a dispute as to the entitlement to the proceeds of a life insurance policy. After the insured died, Northwestern Mutual paid a portion of the death benefit proceeds to the beneficiary named in the policy and interpleaded the remaining death benefit proceeds. The three Defendants each have asserted an entitlement to all or a portion of the death benefit proceeds. In addition, Defendants Stroman and Hughes have asserted a counterclaim against Northwestern Mutual, and a cross claim against Defendant Pugh. [Initial Pretrial Report.]

2.  The underlying issues pertinent to this lawsuit are that Northwestern Mutual issued a life insurance policy to the decedent Curtis Hughes on May 3, 1996. At the time, the named beneficiary was the decedent's then wife Defendant Stroman. On February 18, 1999, the decedent revoked this beneficiary designation and named his mother, Defendant Pugh as the direct beneficiary of the insurance policy. On February 28, 2000, the decedent and Stroman were divorced. In the Marital Settlement Agreement, the decedent covenanted to "maintain insurance for $100,000 on his life, naming the child as beneficiary or Wife or bank as trustee for the benefit of the child. . . ." The term "child" referred to the decedent's minor child, Defendant Holly Hughes. The decedent died on or about February 28, 2002 [Complaint], without having obtained any separate insurance policy to protect his minor child as contemplated in the Marital Settlement Agreement.

3.  The parties attended a court-ordered settlement conference before United States Magistrate Judge Richard L. Puglisi and reached a settlement of all issues in this case, subject to the Court's approval. The terms of the settlement are that $100,000 is to be paid to Defendant Stroman

for the sole use and benefit of the minor child, Defendant Hughes. The balance of funds being held in the Court registry as of the end of January 2004, in the amount of $743,393.82[3] (with some interest still to be accrued), is to be paid to Defendant Pugh. The parties agreed that all claims, counterclaims and cross claims are dismissed with prejudice, and that Northwestern Mutual is released from liability.

4.  On February 27, 2004, the Court held a hearing on the parties' application for approval of the settlement. Counsel for Plaintiff Northwestern Mutual was present, and counsel for Defendant Stroman was present, along with Defendant Stroman. Defendant Pugh was present and representing herself *pro se*.

5.  During the hearing, counsel for Northwestern Mutual explained the terms of the settlement reached in the previous day, February 26, 2004. Defendant Pugh and counsel for Defendant Stroman agreed with Northwestern Mutual's recitation of the terms of the settlement.

6.  At the February 27, 2004 hearing, Ms. Stroman testified that she understood she had no obligation to settle and had a right to proceed to trial, and that she further understood if this case proceeded to trial, a jury could find in an amount above or below the settlement figure to which the parties have agreed.

7.  Ms. Stroman also testified that she was not under the influence of any medications or substances that had impaired her ability to understand and that she had had ample opportunity to confer with her attorney regarding the settlement. Ms. Stroman stated that her attorney had discussed the details of this case with her and what evidence was needed to prevail. She was satisfied with her legal representation and had no complaints concerning her attorney. Ms. Stroman stated that she

---

[3]The Court may *sua sponte* take judicial notice of its own court records. Blinder, Robinson & Co., Inc. v. U.S.S.E.C., 692 F.2d 102, 105 (10th Cir. 1982).

believed the settlement was fair and that the settlement was not a product of force, coercion or undue influence.

8.  Ms. Stroman also testified that she understood the settlement monies designated for her the minor child, Defendant Hughes, was for Hughes' exclusive use. Thus, Ms. Stroman understands that the settlement funds for the minor child is for her use and benefit, in accordance with Leyba v. Whitley, 118 N.M. 435, 882 P.2d 26 (Ct. App. 1994), *reversed in part on other grounds by*, 120 N.M. 768, 907 P.2d 172 (1995). Ms. Stroman further testified that she expected the settlement monies to be used for the minor child's college education, uninsured medical costs and/or for a private school education.

9.  Defendant Pugh also testified at the February 27, 2004 hearing. Ms. Pugh actively participated in the settlement proceeding on February 26, 2004. Ms. Pugh also testified that she was not under the influence of any medications or substances that impaired her ability to understand the terms of the settlement or the hearing conducted by the Court on February 27. She believed the settlement was fair and that the settlement was not a product of force, coercion or undue influence. Defendant Pugh requested Court approval of the settlement.

10. Ms. Pugh testified that she agreed to the settlement of the claims on February 26 and that the payment of proceeds was being made to Defendant Stroman for the exclusive use and benefit of the minor child, Defendant Hughes. She testified that Defendant Stroman's intended use of the settlement benefits for the minor child's college education and private schooling was acceptable to her.

11.     Defendant Pugh testified that she had not asserted any counterclaims or cross claims in this matter.  She agrees that all claims, counterclaims and/or cross claims that are asserted in this action will be dismissed, with prejudice, as part of this settlement.

## Conclusions of Law

After consideration of the evidence and the presentations of counsel and parties, the undersigned Magistrate Judge concludes that the Court has jurisdiction over the parties and subject matter, and further concludes that this settlement is in the minor child, Defendant Hughes' best interests.  Therefore, the Court recommends that the settlement be approved and that this case be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge